IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

KAYCHIA CALVERT & PATRICK SMITH, as the Administrators of the Estate of KADARIUS SMITH, or in the alternative, as the next of kin and the wrongful death beneficiaries of KADARIUS SMITH, deceased, and in their individual capacities — PLAINTIFFS

v. — CIVIL ACTION NO. 4:25-cv-91-GHD-JMV

CITY OF LELAND, MISSISSIPPI *ex rel.* LELAND POLICE DEPARTMENT, a division of Government for the CITY OF LELAND, WASHINGTON COUNTY, MISSISSIPPI, OFFICER STEPHANIE TROTTER, in his official and individual capacities; OFFICER DERACIUS WINFORD, in his official and individual capacities, and CHIEF JIMMY MYRICK, in his official and individual capacities — DEFENDANTS

MEMORANDUM OPINION

On March 10, 2026, Plaintiffs filed their Corrected Second Amended Complaint [37], which is now the operative complaint. The Complaint [37] brings several claims against the Defendants pursuant to federal and state law. Before the Court is Defendants' Motion to Dismiss [47]. The Motion [47] has been fully briefed and is ripe for review. The Court is prepared to rule.

*Factual Background*

This lawsuit arises from the death of 17-year old Kadarius Smith on March 21, 2024.

In the early morning hours of March 21, 2024, at approximately 2:00 A.M., Smith and his cousin, Rashadd Fults, were visiting a young lady named C.C. who had invited them to her house on Davis Lane in Leland, Mississippi. While Smith and Fults were at C.C.'s house, C.C.'s next door neighbor, Peter Strong, called the Leland Police Department regarding a domestic disturbance. According to an investigation report prepared by the Mississippi Highway Patrol,

which is referenced in the Complaint [37], Officer Stephanie Trotter with the Leland Police Department "was dispatched to a call in reference to [two] individuals with guns near Davis Lane." [29], Ex. 4 at p. 5. Officer Trotter, as well as Officer Deracius Winford, arrived at C.C.'s house in response to Strong's call.

When the officers arrived, Smith and Fults were outside on the porch of C.C.'s house. The officers approached Smith and Fults and asked them what they were doing at the house. Smith became afraid, jumped off the porch, and took off running. Fults also took off running down the side of C.C.'s house. Officers Trotter and Winford then began to pursue Smith in their respective patrol vehicles. Neither of them went after Fults.

The Complaint [37] alleges that Officer Winford first began his pursuit of Smith in his patrol vehicle and then exited his patrol vehicle and pursued Smith on foot. Smith then led Officer Winford to the rear of an abandoned residence at which point Officer Winford stopped pursuing him. Nonetheless, Smith continued to run.

According to the Complaint [37], "[Officer] Trotter continued [his] pursuit of [Smith] at a high rate of speed in [his] vehicle at night in a residential neighborhood after [he] lost sight of [Smith]." [37] at p. 5. Officer Trotter's patrol vehicle struck Smith causing blunt force trauma to his head. Smith was transported to Delta Regional Hospital and later pronounced dead. This lawsuit followed.

The Plaintiffs bring several claims pursuant to 42 U.S.C. § 1983 and Mississippi state law against the Defendants City of Leland, Officer Trotter, Officer Winford, and Leland Police Chief Jimmy Myrick (in their official and individual capacities). Through the present Motion [47], Defendants seek dismissal of all claims asserted against them. Plaintiffs oppose the Motion [47].

*Dismissal Standard*

Rule 12(b)(6) allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead 'facts which, if proved, would defeat [the] claim of immunity.'" *Santander v. Salazar*, 133 F.4th 471, 478 (5th Cir. 2025) (quoting *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019)). This is the case because "'[i]t is the plaintiff's burden to demonstrate that qualified immunity is inappropriate' at the motion to dismiss stage." *Id.* (quoting *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023)). "A court must 'carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery.'" *Id.* (quoting *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019)). The Court acknowledges that "'an assertion of qualified immunity… does not subject the complaint to a heightened pleading standard.'" *Id.* (quoting *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020)). However, "the district court must 'do more than determine whether the plaintiff has filed a short and plain statement of his complaint, a statement that rests on more than conclusions alone.'" *Id.* (quoting *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)).

A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F. 3d 228, 232–33 (5th Cir. 2009). In deciding a motion to dismiss, "[t]he court's review is limited to the complaint, any documents

attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). If there are insufficient factual allegations to raise a right to relief above the speculative level, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

*Analysis and Discussion*

As noted above, the Complaint [47] brings a number of claims against the Defendants. Specifically, those claims include: (1) negligence; (2) gross negligence; (3) negligent hiring, retention, supervision and control (against the City only); (4) res ipsa loquitur; (5) reckless disregard; (6) assault and battery (against the individual Defendants); (7) vicarious liability for assault and battery (against the City only); (8) common law tort of outrage; (9) wrongful death; (10) excessive force (against Officer Trotter); (11) municipal liability under *Monell* (against the City only); and (12) failure to intervene (against Officer Winford and Chief Myrick only).

Before addressing the parties' arguments relative to the claims, the Court notes that, in their Response Memorandum [53], Plaintiffs passingly raise an argument relative to conversion of Defendants' Motion [47] to a motion for summary judgment. *See* [53] at p. 10. Specifically, Plaintiffs argue that the Defendants rely on certain extrinsic material in support of their Motion [47] and that, if the Court considers it, then the Motion [17] should be converted to a summary judgment motion and Plaintiffs allowed to conduct discovery. *See* [53] at p. 10. Crucially, the documents at issue include written notes from an interview of Officer Trotter that was conducted by the Mississippi Highway Patrol ("MHP"). *See* [29], Ex. 2.[1] Despite arguing that the documents (purportedly relied upon by the Defendants) are "materials outside the complaint",[2] Plaintiffs

---

[1] Defendants twice cite to this document in their Memorandum [48] in support of their Motion [47]. *See* [48] at p. 5 n.12; p. 6 n.18.
[2] *See* [53] at p. 1.

contend that the MHP interview notes are incorporated by reference into the Complaint [37] and *should be* considered as part of their factual allegations. *See* [53] at p. 4 n.1. For their part, the Defendants point out the conflicting nature of Plaintiffs arguments and respond that conversion is unnecessary.

Against that backdrop, the threshold question before the Court is whether the MHP interview notes are within or beyond the scope of Defendant's 12(b)(6) Motion [37]. *See Hammer v. Nodolf*, 810 F. Supp. 3d 798, 802 (W.D. Tex. 2025) (quoting *Gen. Retail Servs., Inc. v. Wireless Toyz Fran., LLC*, 255 F. App'x 775, 785 (5th Cir. 2007) (explaining that the submission of documents prompts "an obvious threshold question… when considering a motion to dismiss"). In this regard, "[t]he Fifth Circuit has recognized one limited exception to the rule that when considering a motion to dismiss a court is generally limited in its review to the four corners of the complaint." *W&T Offshore, Inc. v. Endurance Assurance Corp.*, 2026 WL 1271389, at *16 (S.D. Tex. Apr. 10, 2026), report and recommendation adopted, 2026 WL 2175593 (S.D. Tex. July 28, 2026) (internal quotation and citations omitted). As noted above, a court may incorporate a document into the pleadings if: "(1) the document is attached to a defendant's motion to dismiss; (2) the document is referred to in the plaintiff's complaint; *and* (3) the document is central to the plaintiff's claims." *Id.* (emphasis added). The Court may also consider documents attached to the complaint. *See Lone Star Fund*, 594 F.3d at 387.

For starters, Plaintiffs have made no effort to establish any of the elements to the four-corner's rule exception. The Court acknowledges that, in their respective briefs, both parties cite the MHP interview notes, which are in the record as an exhibit to a previously terminated motion. *See* [29] Ex. 2. Notably, however, neither party argues that the MHP interview notes are "central to the plaintiff's claims." *W&T Offshore, Inc.*, 2026 WL 1271389 at *16. "A document is central

to a claim when it is necessary to establish an element of the claim." *Hammer*, 810 F. Supp. 3d at 802 (quoting *Harmon v. Toyo Tire U.S.A. Corp.*, 2022 WL 2873481, at *2 (W.D. Tex. July 20, 2022)) (internal quotation marks omitted). Although Plaintiffs heavily rely on the MHP interview notes in their Response Memorandum [53], particularly the portion of the notes indicating that Officer Trotter "saw [Smith] jumping over the fence" before running in front of Officer Trotter's patrol vehicle, they raise no argument as to how the interview notes are central to any claim.

The Court notes that Plaintiffs cite the interview notes twice in their Complaint [37]. The first instance states as follows:

> 32. [Smith] and Fults were not at Strong's home located at 102 Davis Lane, but next door at 105 Davis Lane on the porch, as confirmed in Defendant Trotter's statement to Mississippi Highway Patrolman Darren Johnson [ECF No. 29, Ex. 2 at 1].

[37] at p. 11.

In the Court's view, the context in which the interview notes are referenced in that paragraph has no relation to the selective portion the Plaintiffs now highlight in their Response Memorandum [53]. The second reference to the interview notes in the Complaint [37] provides that:

> 43. In fact, *frame by frame*, in [his] own words, Defendant Trotter *took off in [his] patrol unit*, evidencing pursuit with a high rate of speed; *to cut the suspect off*, evidencing [his] intent to use [his] vehicle in a manner in which it was foreseeable that [he] would bump, hit, ram or run over [Smith] to stop, seize and arrest him against CCLPD policy and in violation of [Smith's] constitutional rights; and the said conduct of Trotter was unreasonable and foreseeable given the fact that [he] *lost sight of the suspect* at night while speeding in a residential community. [*Id.* at Ex. 2 at 2].

*Id.* at p. 13-14 (emphasis in original).

The allegations set forth in that paragraph are in direct contradiction to the interview notes.[3] On this point, the Defendants take the position in their Reply [57] that Plaintiffs attempt to introduce new facts not alleged in the Complaint [37] and that the Court's consideration of the interview notes would be improper. The Court agrees. As Defendants point out, the Complaint [37] alleges on at least fourteen occasions that Officer Trotter did not see Smith before he was hit by the patrol vehicle. *See* [37] at pp. 5-8, 11-15. The Plaintiffs simply do not allege anywhere in the Complaint [37] that Officer Trotter "regained" sight of Smith before the impact. [53] at p. 2. While cognizant of the critical difference in those facts, because Plaintiffs fail to show that the MHP interview notes are central to any claim, the Court finds that the notes fall outside of the scope of Defendant's Motion [47] and therefore it may not consider the same in ruling on the Motion [47]. *See Hammer*, 810 F. Supp. 3d at 802-03.

In light of that ruling, the Court considers whether it should convert Defendants' Motion [47] to a summary judgment motion. It is true that "Federal Rule of Civil Procedure 12(d) gives the courts discretion, when presented with material beyond the scope of a 12(b)(6) motion, to convert the motion into one for summary judgment." *Barbe v. Strategic Claim Consultants LLC*, 2022 WL 1099803, at *2 (W.D. La. Apr. 12, 2022) (citing *Isquith v. Middle S. Utilities, Inc.*, 847 F.2d 186, 194 n.3 (5th Cir. 1988)). Importantly, "[c]ourts accept extra-pleading materials and

---

[3] In their Response Memorandum [53], Plaintiffs cite Rule 10 of the Federal Rules of Civil Procedure to support their position that the MHP interview notes are incorporated into the Complaint [37]. Rule 10 provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). The Court finds Plaintiffs' reliance on Rule 10 misplaced. Here, Plaintiffs attempt to incorporate the statements within the MHP interview notes that are *not* quoted or otherwise referenced in the Complaint [37]. The Court also notes that the interview notes are not attached as an exhibit to the Complaint [37] and therefore Rule 10 is inapplicable to the issue at hand. As stated above, the Plaintiffs wholly fail to argue how the MHP interview notes are central to any claim and do not expound on how their references to the document in the Complaint [37] incorporates the entire document, including Officer Trotter's purported remarks.

convert Rule 12 motion to Rule 56 motions when those materials are 'likely to facilitate the disposition of the action' and 'will enable a rational determination of a summary judgment motion.'" *United States ex rel. Sibley v. Delta Reg'l Med. Ctr.*, 2019 WL 1301967, at *2 (N.D. Miss. Mar. 21, 2019) (quoting *Isquith for & on Behalf of Isquith v. Middle S. Utilities, Inc.*, 847 F.2d 186, 194 n.3 (5th Cir. 1988)). As the party requesting conversion of Defendants' Motion [47], the Plaintiffs bear the burden of persuasion in this regard. Again, the Court notes that Plaintiffs arguments conflict because they argue, in part, that the Court should not consider any extrinsic material at this juncture. The Defendants do not oppose that portion of the Plaintiffs' argument in their Reply [57]. Nonetheless, Plaintiffs also raise the following argument:

> Here, Plaintiffs should be afforded explicit notice and a full opportunity to respond to Defendants' extra-pleading materials before any conversion occurs. The procedural safeguards of Rule 56 must be observed. *Darlak*, 814 F.2d at 1065. Plaintiffs have not had adequate opportunity to develop evidence through discovery, particularly bodycam and dashcam footage, radio communications, and other evidence necessary to establish the constitutional violations alleged and should be allowed to do so.

[53] at p. 12.

Ultimately, the Court finds that conversion of Defendant's Motion [47] is not warranted. Underlying their request for conversion, Plaintiffs appear to seek an opportunity to proceed to discovery despite the procedural posture of this case and the individual Defendants' assertion of a qualified immunity defense, which the Court will address later in this opinion. In other words, Plaintiffs seek the opposite of "facilitat[ing] the disposition of this action" in requesting Rule 56 conversion. *Delta Reg'l Med. Ctr.*, 2019 WL 1301967 at *2. Thus, the Court exercises its discretion to decline converting Defendant's Motion [47] to one for summary judgment and will only consider the factual allegations set forth in the Complaint [37].

Having addressed this preliminary matter, the Court will turn to Plaintiffs' claims beginning with their federal claims.

*I. Federal Claims*

As indicated above, Plaintiffs assert the following claims pursuant to 42 U.S.C. § 1983: (1) excessive force under the Fourth and Fourteenth Amendments against Officer Trotter and (2) failure to intervene against Officer Winford and Chief Myrick. The Complaint [37] also seeks to impose municipal liability against the City pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). The Court will address these claims in turn.

*A. Section 1983 Claims – Generally*

"Regarding Section 1983, the United States Supreme Court has held that the statute's 'very purpose. . . was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action *under color of state law*.'" *Alexander v. McAdams*, 2017 WL 5642328, at *3 (N.D. Miss. Apr. 18, 2017) (quoting *Mitchum v. Foster*, 407 U.S. 225, 242 (1972)) (emphasis in original). "Therefore, to succeed on a Section 1983 claim, the plaintiff must demonstrate: '(1) a violation of the United States Constitution or of federal law; an (2) that the violation was committed by someone acting under color of state law.'" *Id.* (quoting *Hutton v. Shamrock Ridge Homeowners Ass'n*, 2009 WL 4796626, at *2 (N.D. Tex. Dec. 14, 2009) (in turn citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 117 (1988)).

Different standards apply to a Section 1983 claim against a municipality and an individual capacity claim against a government official. *See Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (to establish municipal liability under Section 1983, "[a] plaintiff must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or

constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."); *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) ("In a personal-capacity suit, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. In such a suit, the official may assert personal immunity defenses such as qualified immunity.") Regardless of whether a plaintiff seeks to impose liability against a municipality or against an individual official, the plaintiff must establish a constitutional violation. *See Valle*, 613 F.3d at 541-42; *Goodman*, 571 F.3d at 395 (explaining that the first step in evaluating qualified immunity is to "determine whether plaintiff alleged a violation of a clearly established constitutional right. . ."). In other words, if the Complaint [37] does not allege a plausible constitutional violation, Plaintiffs' Section 1983 claims will be subject to dismissal. Accordingly, the Court will begin its analysis with whether Plaintiffs have sufficiently pled the existence of a constitutional violation.

The Court is compelled to begin its analysis with addressing Plaintiffs' *Monell* claims against the City.[4] In their Reply [57], Defendants point out that "Plaintiffs' response makes no effort to rebut Defendants' *Monell* defenses[.]" [57] at p. 2 n.1. Though Defendants extensively argue that the Complaint [37] fails to identify a policy or custom that would subject the City to municipal liability for any alleged constitutional violation, Plaintiffs do not address those arguments in their Response [53].

It is well established that "[w]hen a party fails to pursue a claim or defense beyond the party's initial pleading, the claim is deemed abandoned or waived." *Holmes v. N. Texas Health Care Laundry Coop. Ass'n*, 304 F. Supp. 3d 525, 540 (N.D. Tex. 2018) (citing *Black v. Panola*

---

[4] For the sake of completeness, the Court clarifies the *Monell* claims asserted against the City. The Complaint [37] seeks to impose municipal liability against the City for the underlying excessive force claims against the individual officers. *See* [37] at p. 28. To the extent is not already encompassed in that claim, the Complaint [37] also asserts a claim on a failure-to-train theory. *See id.* at p. 28-29.

*Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)). The Court finds that, in failing to pursue their *Monell* claims against the City in response to Defendants' Motion [37], Plaintiffs have abandoned or waived such claims. *See id.* Thus, those claims against the City are due to be dismissed. The Court now turns to the claims against the individual officers.[5]

*i.* *Excessive Force (Officer Trotter)*

The Complaint [37] asserts excessive force claims arising under both the Fourth and Fourteenth Amendments. The Fifth Circuit has held that "although excessive force claims may sometimes be brought under the substantive due process clause of the Fourteenth Amendment, they must be analyzed under the Fourth Amendment when that more specific constitutional provision applies." *Est. of Parker v. Mississippi Dep't of Pub. Safety*, 140 F.4th 226, 244 (5th Cir. 2025). Stated differently, "a due process claim is viable only when the alleged misconduct is not susceptible to proper analysis under the Fourth Amendment." *Id.* (internal quotation marks and citations omitted). Importantly, an excessive force claim under the Fourth Amendment requires a plaintiff to first show that seizure occurred. *Hamilton v. Kindred*, 845 F.3d 659, 662 (5th Cir. 2017). The Defendants' primary argument in favor of dismissal of this claim is precisely that Smith was never seized by Officer Trotter and therefore the claim fails under the applicable Fourth Amendment standard. The Plaintiffs disagree. Thus, because the parties dispute whether seizure occurred, the Court must first determine whether Plaintiffs' excessive force claim is viable under the Fourth Amendment before addressing whether the claim is cognizable under the Fourteenth Amendment.

---

[5] Regarding the official capacity claims against Officer Trotter, Officer Winford, and Chief Myrick, the Defendants argue that the same are duplicative of Plaintiffs' claims against the City and subject to dismissal on that basis. Plaintiffs do not contest that proposition, and the Court likewise agrees that those claims are subject to dismissal. *See Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020) (affirming dismissal of official capacity claims as duplicative claims of claims against county).

"An officer seizes a person when he, by means of physical force *or* show of authority, has in some way restrained the liberty of a citizen." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (internal quotations marks and citations omitted; emphasis in original). "In addition, the governmental termination of freedom of movement must be made *through means intentionally applied*." *Id.* Defendants argue that Smith was not seized because the Complaint [37] unequivocally alleges that Officer Trotter did not see Smith before his patrol vehicle struck him. On the other hand, Plaintiffs contend that "a plausible inference of intentional seizure" has been pled because the Complaint [37] alleges that "Officer Trotter deliberately positioned [his] vehicle to intercept Smith, drove at high speed and struck Smith with [his] vehicle after reestablishing visual contact with him." [53] at p. 13. Though the parties emphasize their respective positions concerning whether Officer Trotter saw Smith before the impact or not, the Court does not find that fact to be the determinative factor in the present analysis. Even though the Complaint [37] alleges that Officer Trotter did not see Smith before his patrol vehicle struck him, the fact that Officer Trotter allegedly lost sight of Smith prior to the impact does not carry the day for the Defendants.

In *Flores*, the Fifth Circuit held that the plaintiff was seized by physical force when a law enforcement officer shot her car thereby terminating her freedom of movement. *Flores*, 381 F.3d at 396. Specifically, the court held that "the termination of [plaintiff's] freedom of movement was accomplished by exactly the means [the officer] intentionally applied, i.e., the shot to [plaintiff's] car." *Id.* In reaching its decision, the court relied on the United States Supreme Court's decision in *Brower v. Cnty. of Inyo*, 489 U.S. 593 (1989).

In that case, the United States Supreme Court provided the following explanation with respect to seizure:

> In determining whether the means that terminates the freedom of movement is the very means that the government intended we cannot draw too fine a line, or we will be driven to saying that one is not seized who has been stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned, or by a bullet in the heart that was meant only for the leg. We think it enough for a seizure that a person be stopped *by the very instrumentality set in motion or put in place in order to achieve that result*. It was enough here, therefore, that, according to the allegations of the complaint, Brower was meant to be stopped by the physical obstacle of the roadblock—and that he was so stopped.

*Brower*, 489 U.S. at 598-99 (emphasis added).

As *Flores* and *Brower* make clear, the question before the Court is whether Plaintiffs have alleged facts that would support that Officer Trotter stopped Smith through means intended to effectuate that stop. Here, the Complaint [37] alleges that "[b]oth Defendants Winford and Trotter were speeding *and using their vehicles to apprehend [Smith]* who was on foot the entire time." [37] at p. 11 (emphasis added). It also alleges that Officer Trotter intended to use his patrol vehicle to cut Smith off and to prevent his flight. *See id.* at p. 13. Accordingly, accepting these allegations as true and viewing the same in light most favorable to the Plaintiffs, the Complaint [37] alleges that Smith "was meant to be stopped" by the use of Officer Trotter's patrol vehicle, and that he was so stopped when the vehicle struck him. *Brower*, 489 U.S. at 599. Whether Officer Trotter saw Smith before the impact matters not. As such, the Court finds that the Plaintiffs have sufficiently alleged that Smith was seized.

The remaining elements of a Fourth Amendment excessive force claim include: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores*, 381 F.3d at 396. The Court notes

that Defendants do not contest those elements in their legal memoranda. As such, the Court finds that Plaintiffs have pled a plausible constitutional violation on the part of Officer Trotter.[6]

Next, the Court considers Officer Trotter's qualified immunity defense. As noted above, the Complaint [37] must allege sufficient facts to overcome this defense even at this early stage.

"Qualified immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019) (internal quotation marks and citations omitted). "'In this circuit, the qualified immunity defense involves a shift burden of proof.'" *Id.* (quoting *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)). "'The defendant official must first satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority.'" *Id.* (quoting *Salas*, 980 F.2d at 306). "'An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity.'" *Id.* (quoting *Cronen v. Tex. Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992)). "Once the defendant establishes that the challenged conduct was within the scope of his discretionary authority, the burden then shifts to the plaintiff to rebut the qualified immunity defense." *Id.* (citing *Salas*, 980 F.2d at 306). To overcome a qualified immunity defense at the pleading stage, a plaintiff must sufficiently allege "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019).

[6] Having determined that the Complaint [37] sufficiently alleges a Fourth Amendment excessive force claim, the Court finds that Plaintiff's Fourteenth Amendment claim is foreclosed. *See Est. of Parker v. Mississippi Dep't of Pub. Safety*, 140 F.4th 226, 244 (5th Cir. 2025). The Court additionally notes that Plaintiffs make no effort to respond to Defendants' arguments for dismissal of that claim in their Response Memorandum [53] and, alternatively, have waived or abandoned that claim. *Holmes*, 304 F. Supp. 3d at 540.

There is no dispute in this case that Officer Trotter was acting within the boundaries of his official capacity. Defendants allege that Officer Trotter is entitled to qualified immunity because Plaintiffs fail to allege that any constitutional violation was well established. The Court agrees.

"The Supreme Court has repeatedly told courts… not to define clearly established law at [a] high level of generality." *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) (collecting cases). "Rather, 'the dispositive question is whether the violative nature of *particular* conduct is clearly established.'" *Id.* (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015)) (emphasis in original). In *Morrow*, the Fifth Circuit explained that "overcoming qualified immunity is especially difficult in excessive-force cases." *Id.* at 876. This is because it "is an area of law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Id.*

Citing *Tennessee v. Garner*, 471 U.S. 1, 18-21 (1985), the Plaintiffs argue that "[f]ederal law clearly establishes that use of deadly force against a fleeing suspect who poses no significant threat is unreasonable." [53] at p. 20. The issue with Plaintiff's argument, however, is that the Supreme Court and the Fifth Circuit have "decline[d] to apply *Garner* with a high-level of generality." *Crane v. City of Arlington, Texas*, 2022 WL 4592035, at *8 (5th Cir. Sept. 30, 2022).

As Defendants point out, Plaintiffs have failed to direct the Court to any case that is factually similar to the case at bar. Though they argue that Officer Trotter engaged in an "unlawful pursuit", Plaintiffs do not cite any case that squarely governs the facts of this case. *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020) (explaining that the plaintiff "must point [the] court to a legislative directive or case precedent that is sufficiently clear such that every reasonable official would have understood that what he is doing violates that law."). Here, according to the Complaint [37], Officer Trotter pursued Smith who was fleeing on foot by using his patrol vehicle at a high

rate of speed after losing sight of Smith leading to deadly force upon impact when Smith ran into the road. Other than relying on *Garner*, the only cases cited by Plaintiffs in their Response Memorandum [53] are *Templeton v. Jarmillo*, 28 F.4th 618 (5th Cir. 2022) and *White v. Pauly*, 580 U.S. 73 (2017), which are inapposite. Though both are excessive force cases, neither case involves an officer pursuing a suspect who is fleeing on foot.[7] Other than those cases, Plaintiffs point to the City's internal policies, which the Court finds irrelevant to this prong of Defendants' qualified immunity defense.

Ultimately, "the relevant inquiry is whether existing precedent placed the conclusion that [Officer Trotter] acted unreasonably in these circumstances beyond debate." *Mullenix*, 577 U.S. at 14-15. The Court is unaware of "binding Supreme Court or Fifth Circuit precedent.... [establishing] whether a similarly situated officer violated a constitutional right acting under similar circumstances." *Keller*, 952 F.3d at 225. It finds that Plaintiffs have failed to meet their burden of showing that Officer Trotter would have understood his actions violated clearly established law and therefore he is entitled to qualified immunity on this claim.

*ii. Failure to Intervene (Officer Winford and Chief Myrick)*

Turning to the claims against Officer Winford and Chief Myrick. Plaintiffs assert that Officer Winford and Chief Myrick are individually liable under Section 1983 on a failure-to-intervene theory. "Such a theory requires a plaintiff to show that an officer was present while another officer violated someone's constitutional right, was aware of the violation, and had a clear opportunity to intervene but failed to do so." *Tuttle v. Sepolio*, 68 F.4th 969, 974 (5th Cir. 2023) (citing *Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020)).

[7] *Templeton* involved a plaintiff who claimed officers used excessive force in handcuffing him during his arrest. *See Templeton*, 28 F.4th at 620. *White* is an excessive force case involving an officer involved shooting at the plaintiff's residence. *White*, 580 U.S. at 75-77 (2017). Both cases are factually dissimilar to the case *sub judice*.

As a basis for this claim against these defendants, the Complaint [37] alleges that they failed to tell Officer Trotter to stop pursuing Smith:

> 34. Defendant Winford concluded his pursuit when he no longer maintained visual contact of [Smith]. At this point, Defendant Winford failed to intervene and radio Defendant Trotter to advise [him] to cease and desist pursuit per CCLPD policy.
>
> 35. Chief Jimmy Myrick, who was aware of the pursuit or should have been aware of the pursuit via radio communication, failed to intervene and radio Defendants Trotter and Winford to advise them to cease and desist the vehicle pursuit of [Smith] per CCLPD policy.

[37] at p. 11.

Defendants primarily argue that neither Officer Winford nor Chief Myrick were present on the scene when the incident occurred and therefore this claim against each of them should be dismissed. In response, the Plaintiffs do not provide extensive argument other than explaining their need for discovery to prove this claim. The Court finds that this claim is due to be dismissed for several reasons.

First, as to Chief Myrick, the Complaint [37] does not allege that he was present anywhere near the vicinity of Davis Lane or where the impact with Smith occurred. Plaintiffs' claim against Chief Myrick on a failure-to-intervene theory is dismissed for that reason alone. Second, regarding Officer Winford, the Court acknowledges that the Complaint [37] alleges that he also pursued Smith initially in his patrol vehicle and later on foot. But the Complaint [37] is devoid of any fact establishing that Officer Winford was even aware that Officer Trotter was pursuing Smith in his patrol vehicle, so he could not have been aware of any constitutional violation on the part of Officer Trotter. *See Tuttle*, 68 F.4th at 974. For this reason, this claim is subject to dismissal as lodged against Officer Winford.

Lastly, even if Plaintiffs sufficiently pled facts to support a failure-to-intervene claim against these defendants, the Court finds that Officer Winford and Chief Myrick would be entitled to qualified immunity for the same reasons provided in connection with Officer Trotter's defense. The Plaintiffs have "failed to provide controlling precedent showing that [their] particular conduct violated a clearly established right." *Craig v. Martin*, 49 F.4th 404, 418 (5th Cir. 2022).

Having addressed the Plaintiffs' federal claims, the Court will now turn to the asserted state law claims.

*II. State Law Claims*

Plaintiffs assert a state law claim for negligent hiring, retention, supervision and control, and seek to impose vicarious liability for assault and battery against the City only. They assert a claim of assault and battery against Officer Trotter, Officer Winford, and Chief Myrick, in their individual and official capacities. As to all Defendants, they assert claims for negligence, gross negligence, res ipsa loquitur, reckless disregard, outrage, and wrongful death. Though neither party raises the issue, the Court notes that it has concerns regarding jurisdiction over the remaining state law claims. *See, e.g.*, *Reule v. Jackson*, 114 F. 4th 360, 365 (5th Cir. 2024) ("The issue of subject matter jurisdiction cannot be waived, and federal courts are duty-bound to examine the basis of subject matter jurisdiction at all stages in the proceedings and dismiss if jurisdiction is lacking.") (internal quotation marks and citations omitted).

The Complaint [37] premises jurisdiction based on 28 U.S.C. § 1331 (federal question). *See* [37] at p. 4. It brings only three federal claims—the Section 1983 claims against the City and the individual Defendants. Having dismissed all of the federal claims, this case now involves only state law claims between in-state Defendants. The Court exercises its discretion to decline supplement jurisdiction over the remaining state law claims. *See Johnston v. Dexel*, 373 F. Supp.

3d 764, 775 (S.D. Tex. 2019) (quoting *Heggemeier v. Caldwell Cnty., Texas*, 826 F.3d 861, 872 (5th Cir. 2016) ("Generally, a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial.") (internal quotation marks omitted); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if… the district court has dismissed all claims over which it has original jurisdiction[.]"); *Cannon v. West Point Consol. Sch. Dist.*, 2026 WL 222541, at *2 (N.D. Miss. Jan. 28, 2026) (explaining that it is the general rule in the Fifth Circuit to decline to exercise jurisdiction over pendent state-law claims when all federal claims have been dismissed prior to trial).

In reaching this determination "the court is guided by the … statutory factors as well as the common law factors of judicial economy, convenience, fairness, and comity." *Cannon*, 2026 WL 222541 at *2. Applying the relevant standards, the Court notes that the parties have engaged in no discovery because this case has been stayed due to the Defendants' request for dismissal on sovereign and qualified immunity grounds. *See* [49]. In total, this case has been pending in federal court just over one year, and, as it concerns the state law claims, the case is postured in its early stages. Additionally, though this case was not removed from state court, the Plaintiffs have requested, as an alternative, that this case proceed in state court in the event their federal claims are dismissed. *See* [53] at p. 22 (arguing that "[a]lternatively, if dismissal is granted, remand Plaintiffs' remaining state law claims to state court."). That request appears to be unopposed, and the Court finds that "[t]here is nothing unfair about matters of state law between in-state parties being litigated in state court." *Cannon*, 2026 WL 222541 at *3. In sum, there is simply no need to depart from the general rule in the Fifth Circuit in this circumstance. *See Johnston*, 373 F. Supp. 3d at 775.

*Conclusion*

For the reasons set forth above, the Defendants' Motion to Dismiss [47] is hereby GRANTED. Plaintiffs' Section 1983 claims against the City, Officer Stephanie Trotter, Officer Deracius Winford, and Chief Jimmy Myrick are dismissed *with prejudice*. The Plaintiffs' state law claims asserted against the Defendants are DISMISSED *without prejudice* for lack of subject matter jurisdiction. An order in accordance with this opinion shall issue this day.

THIS, the 18th day of November, 2026.

Glen H. Davidson

SENIOR U.S. DISTRICT JUDGE